UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:02-cr-5438 OWW |
| | ) | |
| Plaintiff, | ) | ORDER RE MOTIONS FOR NEW |
| | ) | TRIAL AND TO RECONSIDER |
| v. | ) | DENIAL OF MOTIONS FOR NEW |
| | ) | TRIAL |
| AKOP KRBOYAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on Defendant's motions for new trial based on alibi and insufficiency of the evidence, reconsideration of new trial, and second motion for reconsideration of new trial motion based on newly discovered evidence re trial interpreter.

Defendant Akop Krboyan ("Defendant") was convicted on October 15, 2004, after a six day jury trial of arson and 18 counts of mail fraud arising out of an August 31, 2000, fire at his restaurant, The Golden Rooster, in Clovis, California. By written stipulation of the parties of October 22, 2004, the time for filing and hearing of Defendant's motion for new trial was extended on a number of occasions. The initial new trial motion was heard, considered, and denied May 3, 2005. A supplemental

motion re newly discovered alibi witness for new trial was filed, an evidentiary hearing held and was denied on June 30, 2005. A motion to reconsider denial of the new trial motion was filed August 24, 2005. Further evidentiary hearings were held on the motion for reconsideration on October 28, November 3, and November 15, 2005. An additional motion for new trial based on allegedly newly discovered evidence was filed and further evidentiary proceedings held, whereupon all motions were decided November 29, 2005. The motion for reconsideration of the denial of the supplemental new trial motion based on newly discovered alibi evidence was granted. The motion for new trial based on interpreter error was granted. No reconsideration of the denial of new trial on sufficiency of the evidence grounds was sought. That ground need not be addressed.

    The motions for new trial are timely within the meaning of Fed.R.Crim.P. 33(b)(2) because the time for filing the new trial motion was extended on agreement of the parties within seven days following the return of verdict and entry of judgment. *United States v. Harrington*, 410 F.3d 598, 599 (9th Cir. 2005). The government also refers to the three year filing period provided by Fed.R.Crim.P. 33(b)(1) (any motion for a new trial grounded on newly discovered evidence must be filed within three years of the verdict or a finding of guilty), which is also satisfied. The jury verdict was entered on October 15, 2004, and the first new trial motion filed December 30, 2004, by stipulation of the parties and court order entered October 22, 2005.

///
///

A.   <u>New Trial Standard</u>

A district court's power to grant a motion for new trial is broader than its power to grant a motion for judgment of acquittal. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). The trial court is not required to view the evidence in the light most favorable to the verdict, and is free to weigh the evidence and evaluate for itself the credibility of the witnesses. *United States v. Alston*, 974 F.2d 1206, 1211-1212 (9th Cir. 1992). This means the court may weigh the evidence on its own and independently consider the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury. *Id.* at p. 1212; *citing United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

*Eberhart v. United States*, 126 S.Ct. 403, 407 (2005) establishes that although Rule 33 motions are non-jurisdictional and Rule 33 is a claim-processing rule, the motion for new trial filing requirement is inflexible, requiring that the time periods afforded be satisfied. A failure to do so forfeits the right to proceed under the Rule. *Id.* at 407.

B.   <u>Timeliness of Motion - Procedural History</u>

Here, the government has raised the alleged defense of "timeliness" of the new trial motions, however, this goes to the newly discovered evidence, not the timeliness of the filing of

3

1 the Rule 33 motions for new trial and the subsequent motions for
2 reconsideration.
3     The original Rule 33 motion for new trial was filed by
4 stipulation on December 30, 2004.  The time for hearing on the
5 government's opposition was extended to January 24, 2005, and the
6 original hearing set for February 14, 2005.  The government's
7 opposition was filed January 25, 2005, and the hearing on the new
8 trial motions was re-set for March 7, 2005, at the request of the
9 parties.  An unopposed motion to continue sentencing and motion
10 for new trial was filed March 2, 2005.  The statement of the
11 government's non-opposition was filed March 3, 2005.  The
12 government filed its response to objections to the presentence
13 report March 14, 2005, and on March 28, 2005, Defendant moved to
14 continue sentencing and hearing of the motion for new trial.  The
15 government filed its opposition to continue the motion for new
16 trial and sentencing on March 29, 2005.  On March 31, 2005, a
17 stipulation to continue the hearing on the motion for new trial
18 and sentencing was entered, ordered by the court, and the hearing
19 continued to April 18, 2005.  The hearing was then continued by
20 stipulation of the parties to April 25, 2005.  On April 21, 2005,
21 Defendant filed a supplemental memorandum re: presentence
22 investigation report and his reply to the government's opposition
23 to his motion for new trial and for judgment of acquittal.  On
24 April 25, 2005, the hearing on the motion for new trial and
25 sentencing was continued to May 3, 2005, by order of the court.
26 The Defendant was then remanded to custody.
27     On May 3, 2005, the original motion for new trial was denied
28 and sentencing was set for May 5, 2005.  On May 5, sentencing was

4

continued to May 31, 2005, and the parties were granted additional time to file briefs.  On application of defense counsel, Defendant's ex parte motion to continue the sentencing hearing was granted over the government's opposition with motions to be filed by June 14, 2005, replies by June 28, and a motion hearing/sentencing set for June 30, 2005.

On June 14, 2005, Defendant filed a supplemental motion for new trial.  The government's opposition was filed June 29, 2005.  On June 30, 2005, an evidentiary hearing was held on the supplemental motion for new trial based on newly discovered evidence.  The supplemental motion for new trial was denied on June 30, 2005, and sentencing set for July 8, 2005.

Defendant's motion to continue sentencing due to unavailability of co-counsel was made July 7, 2005, and opposed by the government.  A response filed by the Defendant on July 8, 2005, and sentencing was continued to August 3, 2005, by court order entered July 11, 2005.  On July 2, 2005, additional declarations by Defendant were filed with the court.  On August 2, 2005, based on information received from a trial interpreter, Sarkis Vartanian, that he believed he had been asked to do something improper by Defendant's wife, an in camera hearing was held with counsel for the government, counsel for Defendant, and the interpreter, Sarkis Vartanian.  A hearing in open court was subsequently held to consider interpreter issues raised by mr. Vartanian.

Due to the unavailability of an Eastern Armenian interpreter, sentencing was continued to August 26, 2005.  Additional affidavits of Defendant were filed on August 4, 2005.

On August 24, 2005, a supplemental motion to continue and further motion for reconsideration of Defendant's motion for new trial was filed.  The government's response and opposition was filed August 25, 2005.  On August 26, 2005, sentencing and motion for reconsideration of motion for new trial were continued to November 3, 2005, with motions due by September 23, 2005, and responses by October 14, 2005.

The hearing on the reconsideration of the motions for new trial and sentencing was commenced in open court on November 3, 2005, at which time evidence was taken.  Further declarations were filed November 4, 7, and 8, 2005, by and on behalf of Defendant.  The government's response to the supplemental motion to reconsider motion for new trial was filed on November 8, 2005. The parties appeared in court November 10, 2005, and all proceedings were continued to November 15, 2005.  On November 15, 2005, interpreter testimony was taken and Defendant's additional declarations about interpreter issues were received in evidence. On November 29, 2005, the motion for reconsideration of motion for new trial denial was heard and granted.  A new trial was ordered.  A trial setting conference and review of Defendant's release status pending trial were set for December 14, 2005.

C.   <u>Newly Discovered Evidence</u>

To prevail on a Rule 33 motion for new trial based on newly discovered evidence, the Defendant must satisfy a five-part test: (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the Defendant's part; (3) the evidence must be

material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in an acquittal. *Harrington*, 410 F.3d at 601; citing *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991). Finally, the government asserts that to be "newly discovered" evidence must be discovered after trial. *United States v. McKinney*, 952 F.2d 333, 335 (9th Cir. 1991). The third and fourth elements are not in dispute.

Here, Defendant argues two separate categories of newly discovered evidence exist: (1) location of a witness who provides Defendant an alibi; and (2) interpreter issues that denied Defendant due process and a fair trial.

D.  <u>Alibi Defense</u>

A supplemental motion for new trial is based on the location after trial and after denial of the initial new trial motion, of a customer who frequented Defendant's restaurant, who is a claimed alibi witness who, Defendant testified at trial, he met by chance in a parking lot at Costco in Clovis, California, around 8:00 to 8:30 p.m., the night of the arson fire. Because neither the Defendant or his wife, who operated the Golden Rooster Restaurant which was the subject of the alleged arson, knew the last name of this customer, nor any other identifying information, Defendant asserts there was no way to locate or subpoena the alibi witness for trial. Defense trial counsel, Mr. Dan Bacon, confirms this in his post-trial testimony, that he tried but could not locate the alibi witness, Mr. Wayne Metzger, for trial.

A chance meeting on May 12, 2005, by Defendant's wife and son with the witness at a farm market located near Fresno State University at Barstow and Chestnut Streets in Fresno, was the first opportunity the Defendant had to identify and locate this alibi witness to provide alibi testimony. The witness, Wayne Metzger, then submitted two declarations under penalty of perjury and testified at the June 30, 2005, evidentiary hearing held in open court in connection with Defendant's supplemental motion for new trial, based on newly discovered alibi evidence. The Court found at the hearing that the evidence was newly discovered and could not, with diligence, have been previously discovered, in view of the lack of information about the customer's true name, address, or whereabouts before May 12, 2005. The evidence the witness presents is material because if believed, Mr. Metzger's testimony could establish an alibi and is not cumulative, because only Mr. Metzger and his wife were present at the Costco parking lot meeting the night of the fire. The witness, Mr. Metzger, did not testify at trial.

Whether this newly discovered evidence, in the form of alibi testimony, "would probably result in acquittal," was originally decided against the Defendant by the original denial of the supplemental new trial motion on or about June 30, 2005. Rule 33(a) provides that a court "may vacate any judgment and grant a new trial if the interests of justice so requires." An alibi establishing that the Defendant was somewhere else when the fire started, probably could provide a complete defense to the crime of arson, if the facts underlying the alibi were believed by the trier of fact; where the government's theory of the case was that

8

1    Defendant himself was at the restaurant around 8:30 to 8:37 and
2    set the fire.
3         Mr. Metzger testified that around 8:15 to 8:20 p.m., the
4    same night as the fire, August 31, 2000, he and his wife had
5    shopped at Costco in Clovis, California, and met Mr. and Mrs.
6    Krboyan in the parking lot at the Clovis Costco.  Mr. Metzger
7    told the Krboyans it was very busy in Costco.  He chatted with
8    the Krboyans for around fifteen or twenty minutes and Mr. Krboyan
9    helped Mr. Metzger put groceries in Mr. Metzger's vehicle.  At
10   the trial, Mr. and Mrs. Krboyan both testified about meeting
11   their customer in the Costco parking lot and as to the time
12   period, which under their theory of defense, spanned the time the
13   fire started and another witness, Mr. Robles, allegedly saw Mr.
14   Krboyan driving in the vicinity of the restaurant at the time of
15   the fire.  The Metzger testimony is extremely important, because
16   at trial, the Krboyans had no disinterested witness to
17   corroborate their presence at Costco the night of the fire.  It
18   is likely that the jury disbelieved their alibi testimony because
19   it was self-serving and uncorroborated.
20        Mr. Krboyan's image was captured in a video record of him in
21   the check-out line at Food 4 Less in Clovis around 8:55 p.m. the
22   night of the arson.  The Krboyans testified that because Costco
23   was busy and closing, that they left Costco and went on to shop
24   at the Clovis Food 4 Less.  This time interval was not
25   inconsistent with Mr. Krboyan being at the restaurant because
26   Food 4 Less was only a couple of miles and a few minutes' drive
27   from the Krboyan residence and the restaurant.
28        At the evidentiary hearing, Mr. Metzger testified that he

and his wife made purchases at Costco and used a credit card to do so, although Mr. Metzger could not remember which credit card was used.  A Costco manager was called by the government, who testified that no customer can purchase any item at Costco, ever, without using a Costco card that enters the customer's assigned number into the cash register, which is also a computer terminal, and keeps a permanent record of all transactions.  After a complete review of the records for August 31, 2000, the night of the fire, and days before and after that date, the Costco manager testified there was no record of any purchase at Costco by Mr. Metzger or his wife or any business with which they were associated and held a Costco card in the August 31, 2000, time period.

The Court originally ruled on June 30, 2005, that Mr. Metzger must be mistaken about which night he met the Defendant and his wife at Costco based on the Costco computer evidence, and found that Mr. Metzger's testimony was not credible and would not establish an alibi.  Upon reconsideration, the court determines that this alibi evidence, which was never presented to the jury, if believed, could create reasonable doubt to result in an acquittal of the Defendant.

The Defendant invoked his Sixth Amendment right to jury trial and the Defendant is entitled to have a jury of his peers, not the court, make a determination of the ultimate credibility and efficacy of all the newly discovered evidence surrounding the alibi defense and whether it creates reasonable doubt.  For this reason, on November 29, 2005, the court granted the Defendant's motion for new trial for newly discovered evidence in support of

the alibi defense to prevent a miscarriage of justice.

An alibi defense differs from other mistaken identity defenses in an important respect: a defendant might win based on an alibi defense even if he does nothing at all to dispute the government's proof, because the alibi itself can create reasonable doubt. *United States v. Zuniga*, 6 F.3d 589, 571 (9th Cir. 1993) (noting special treatment accorded the alibi defense under Fed.R.Crim.P. 12.1; *see also United States v. Lillard*, 354 F.3d 850, 855 (9th Cir. 2003); *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987) (even if the alibi evidence is "weak, insufficient, inconsistent, or of doubtful credibility," an alibi instruction should be given and the issue submitted to the jury); *United States v. Blueford*, 312 F.3d 962, 971-76 (9th Cir. 2000) (discussing government's failure to timely produce tapes that did not support government theory of fabricated alibi defense); *Nicholas v. Government of Guam*, 325 F.2d 781, 783 (9th Cir. 1963) (alibi presented question of fact for jury); *United States v. Hartlerode*, 467 F.2d 1280, 1281 (9th Cir. 1972) (alibi defense was for the jury to decide).

Although the court has authority to consider witness credibility on a motion for new trial, deciding the newly discovered alibi witness' credibility and testimony as a matter of law effectively deprives Defendant of his right to a jury trial on this evidence of alibi. Such alibi evidence, if believed, would probably result in an acquittal by creating reasonable doubt. Reasonable minds could differ about the credibility and effect of Mr. Metzger's testimony. The court is unwilling to usurp the jury's function as the trier of fact.

11

In the final analysis, it cannot be decided as a matter of law that if the jury had heard the Metzger testimony and believed it, that the jury would have reached the same verdict.  *See United States v. Vavages*, 151 F.3d 1185, 1193, fn4 (9th Cir. 1998) (court could not find harmless the prosecutor's substantial interference with an alibi witness' decision to testify).

E.   <u>Interpreter Issue</u>

The second motion to reconsider denial of the original new trial motion is based in part on alleged newly discovered evidence which was filed August 24, 2005.  Defendant asserts that Sarkis Vartanian, an interpreter in pre-trial proceedings and at trial spoke Western Armenian and was proficient in the Western Armenian language; however, the Defendant speaks Eastern Armenian; and during the trial Mr. Vartanian, the Western Armenian interpreter, gave erroneous or incomplete translations of testimony and court proceedings into Eastern Armenian, because the interpreter did not speak Eastern Armenian; made incorrect translations of Defendant's use of Eastern Armenian into English; all of which prevented Defendant from effectively communicating with his counsel, from participating in his own defense, and prevented the jury from hearing and understanding Defendant's intended testimony as he gave it from the witness stand, all of which resulted in a denial of due process, right to a fair trial, and prejudiced Defendant in the jury's eyes, which effected a miscarriage of justice.

Defendant has submitted voluminous declarations and descriptions of matters he did not understand before and during

12

trial; examples of the differences in Western and Eastern Armenian words; and illustrations of instances during trial where the interpreter erroneously translated Defendant's words to the jury, argued with Defendant in front of the jury, and interpreted or summarized testimony in such a way to make the Defendant look foolish or stupid. Defendant also submitted recent 2005 State of California, Superior Court Interpreter Rules, which recognize Western Armenian and Eastern Armenian languages as two separate languages in which interpreters are certified.

The evidence more than preponderates that Western Armenian is a different language from Eastern Armenian and that the Defendant was entitled throughout the trial to have an Eastern Armenian interpreter, fluent in the Eastern Armenian language. Whether he timely asserted and/or waived the right to an Eastern Armenian interpreter at trial is disputed.

### F.   Waiver of Interpreter Deficiencies

The government strenuously argues that the interpreter issue cannot be "newly discovered," because, in at least six proceedings prior to the trial where Mr. Vartanian, the Western Armenian interpreter was present and was the only interpreter in court, Mr. Krboyan made no complaints about his understanding of the proceedings or that Mr. Vartanian did not interpret correctly. Mr. Vartanian interpreted during the entire jury selection process and during several days of trial testimony. Mr. Bacon has testified that during the jury trial, on one occasion, he told the courtroom deputy clerk that Mr. Krboyan was having a problem with Mr. Vartanian's interpreting. Mr. Bacon

13

did not bring this to the attention of the court directly.  No one else, including Defendant or Mr. Vartanian, advised the court during trial that there were problems with the interpreter.  However, during Mr. Krboyan's testimony, on one or two occasions Mr. Krboyan did state that he "did not understand" the question or had a problem with the interpreter's translation of Defendant's answer.

The government argues that these few objections are overridden by approximately twenty pre-trial and post-trial hearings where Mr. Vartanian acted as the interpreter and Defendant raised no complaint.  The Defendant responds that side-bar proceedings during the trial were not translated into Eastern Armenian; that his testimony was not accurately translated into English by Mr. Vartanian; that Mr. Vartanian incorrectly summarized statements of witnesses, testimony, and statements of the court; and that Mr. Krboyan was required to argue with Mr. Vartanian about the meaning of words or testimony in front of the jury and that interpreter error made Defendant look argumentative or stupid in front of the jury; all of which caused the jury to have an unfavorable impression of Defendant and to discredit his testimony as a result of such interpreter conduct.

The government rejoins that there were then and now, no complaints about interpreter error during Defendant's direct testimony and that the Defendant had a complete opportunity on direct to tell his entire story to the jury without objection raised at any time, or in any post-trial motion.  The government argues that the Defendant was made to look foolish and untruthful on cross examination because he did not testify truthfully and

was caught in contradictory facts he could not explain.  The government cites *United States v. Si*, 333 F.3d 1041, 1043-1044 (9th Cir. 2003) to support its contention that "to allow Defendant to remain silent throughout the trial and then . . . assert a claim of inadequate translation would be an open invitation to abuse." Citing *Gonzales v. United States*, 33 F.3d 1047, 1051 (9th Cir. 1994) (quoting *United States v. Valladares*, 871 F.2d at 1566).  However, in *Si*, after recognizing "it is a fruitless and frustrating exercise for the appellate court to have to infer language difficulty from every faltering, repetitious bit of testimony in the record;" *United States v. Carrion*, 488 F.2d 12, 15 (1st Cir. 1973), 333 F.3d at p. 1044; the Ninth Circuit remanded the *Si* case to the district court to determine whether *Si's* language abilities: (1) inhibited his comprehension of the proceedings, or his ability to communicate with counsel and the court, and if so, (2) whether *Si* waived his right to an interpreter by not taking advantage of any interpreter that may have been available during *Si's* file.  *Id.* at 1045.

    The government also refers to two questions asked by Mr. Bacon where, as Defendant's counsel, Mr. Bacon, admonished the Defendant not to answer the question before Mr. Bacon had completed asking the question; Mr. Bacon stated: "I know you understand some English, Mr. Krboyan," and "I know you speak some English, and you speak pretty good English, but you have to wait."  From these questions, the government infers that Mr. Krboyan has a better understanding of the English language than he now admits.  Despite the government's contrary position,

15

complained-of testimony on pages 888-901 of the transcript was translated by Mr. Vartanian, not Ms. Estes.

The court made findings, on the record, during the November 29, 2005, hearing on reconsideration of the motion for new trial concerning interpreter error which are incorporated here by this reference. In the final analysis the court has concern about the integrity of the proceedings in which claimed interpreter error, confusion, and disagreement between the Western Armenian interpreter and Mr. Krboyan, in the presence of the jury, exist. The manner of translation and demeanor of the interpreter cast Mr. Krboyan in a needlessly unfavorable and negative light. Neither side disputes that Mr. Krboyan had a right to an interpreter. *United States v. Mayans*, 17 F.3d 1174, 1179-81 (9th Cir. 1994); *see also Meyer v. Nebraska*, 262 U.S. 390, 401 (1923).

To support the argument that the evidence is newly discovered, Defendant submits that he and his wife have been working for months, hampered by his incarcerated status which has greatly slowed their painstaking review, page-by-page, of the trial transcript, to point out discrepancies and problems with the interpreter and translation at trial.

The transcript was prepared and completed in December of 2004. The Defendant claims that he has been diligent, but due to his reliance on his own family members to help him analyze the transcript has taken until the present time for this process to be completed (from August through October of 2005). Defendant has not been able to point out to the court all the alleged errors and deficiencies in interpretation and translation.

As to the materiality of the interpretation and translation

16

issues, Defendant argues that his intended testimony was not accurately translated into the English language to enable the jury to understand it.  Further, that the interpreter's demeanor, tone, and forensic presentation of testimony from Eastern Armenian to Western Armenian to the English language caused Mr. Krboyan to appear uncooperative, incredible, and argumentative in the jury's eyes.

Defendant asserts that the interpreter evidence is neither cumulative nor impeaching because the issue of interpreter error has not been previously raised.  Defendant argues that a new trial would probably result in an acquittal, because, if Mr. Krboyan could fully understand the questions being asked of him and have his intended answers accurately translated into English from Eastern Armenian, that he would not appear argumentative, stupid, confused, or uncooperative.  That his version of the facts would be stated accurately for full and fair consideration by the jury.  The court directly observed that the interpreter's demeanor and tone when translating Mr. Krboyan's testimony was gruff, seemingly non-responsive in some instances, and was orally presented in a manner that could be interpreted as negative.

On the issue of waiver, the Defendant responds that pre-trial proceedings were not extended enough, nor were the issues so intricate or complex as at trial, and that all those proceedings were not comparable to the conditions at the jury trial.  Although Mr. Krboyan had a headset, his wife was not in the courtroom during the trial, because she was excluded as a witness; and Mr. Krboyan had no one to discuss in Eastern Armenian what was occurring and whether or not the interpreter

17

was effectively and accurately translating the proceedings and testimony.

Mr. Krboyan argues that during the trial Mr. Krboyan attempted to raise the issue of difficulties with the interpreter but for some reason Mr. Bacon did not address the matter directly to the judge during or after trial; having only, on one occasion, told the courtroom deputy clerk there were problems with the interpreter.  There was at least one other interpreter besides Mr. Vartanian, and sometimes two, present during the trial.  Mr. Krboyan complains that until the trial he did not know that Mr. Vartanian was not a certified interpreter.  The issue of whether there was a difference in the Armenian language and two different languages, Eastern Armenian and Western Armenian, was not addressed until long after the trial.  No one raised the issue of the fact that the interpreter did not speak Eastern Armenian, but rather spoke only Western Armenian.

Mr. Krboyan complains: (1) that the interpreter did not translate word-for-word; (2) the translator did not correctly translate Mr. Krboyan's testimony; (3) the translator added extra words and answered questions using the interpreter's understanding of what Mr. Krboyan was saying, not Mr. Krboyan's exact words; (4) the interpreter only translated parts of certain questions; (5) the translator only translated to English parts of Mr. Krboyan's answer to questions; (6) at times the translator told Mr. Krboyan to simply say "yes" or "no;" (7) the translator sometimes held a dialogue with Mr. Krboyan instead of accurately translating, word-for-word, what was being said; (8) Mr. Krboyan told the translator during the trial the interpretor was not

1  translating words correctly; (9) at least two instances of this
2  appear on the trial transcript.
3      Mr. Krboyan quotes an example of testimony reflected at RT
4  894:14-20 where the following testimony is recorded:
5      THE WITNESS: I had a white jacket . . .
6      THE COURT: Wait, let the witness complete his answer.
7      THE WITNESS: I had a red jacket . . .
8      (The witness spoke to the interpreter)
9      THE WITNESS:  I had a black jacket that I put on when I was coming out of my house.

11     Mr. Krboyan complains this is an example that made him
12 appear confused or stupid, or worse incredible, in the eyes of
13 the jury, by referring to his jacket having three different
14 colors when it only had one.
15     Based on the totality of these issues, observed difficulties
16 with the Western Armenian interpreter, and the fundamental right
17 of a criminal defendant who does not speak the English language,
18 to understand the entirety of the proceedings and everything that
19 is being said in the courtroom; to be able to communicate
20 effectively with his own lawyer through the interpreter; to be
21 able to understand what witnesses are saying in English; to be
22 able to understand what questions are asked him in English; and
23 to have his intended testimony accurately translated from Eastern
24 Armenian to English, all are fundamental prerequisites to due
25 process and a fair trial.  In the overall, based on the totality
26 of the declarations, Defendant's analyses of the trial transcript
27 testimony and interpretational errors, the court lacks confidence
28 in the integrity of the outcome of the proceedings and cannot

19

find that a miscarriage of justice was not effectuated by virtue of the problems between the Defendant and the interpreter, Mr. Vartanian.

G.  Conclusion

Another trial where the Defendant submits any alibi witnesses; is able to fully and freely communicate with his attorneys and has Eastern Armenian interpreters who will enable him to understand the entirety of the proceedings and to provide a true and correct translation of his testimony into the English language for the jury, is a small price to pay to avoid a miscarriage of justice.  For all the reasons stated above and on the record in the proceedings of November 29, 2005, Defendant's motion for new trial is granted based on newly discovered evidence of the identity and whereabouts of the alibi witness, Mr. Wayne Metzger, and on the further ground that interpreter errors infected the entire jury trial in such a way as to prevent the Defendant from effectively cooperating and participating in his own defense, in violation of his Sixth Amendment right to a fair trial and his Fifth Amendment right to due process.

 A trial setting conference is set for December 14, 2005, at 11:30 a.m.  Defendant shall have present his trial attorney(s) who will try the case and a firm trial date shall be set.
SO ORDERED.
DATED:  December 7, 2005.

                                    ___/s/ OLIVER W. WANGER_____
                                        Oliver W. Wanger
                                 **UNITED STATES DISTRICT JUDGE**