1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT FOR THE

7                   EASTERN DISTRICT OF CALIFORNIA

8

9  UNITED STATES OF AMERICA,     )     No. CV-F-10-2016 OWW
                                 )     (No. CR-F-02-5438 OWW)
10                               )
                                 )     MEMORANDUM DECISION AND
11             Plaintiff/        )     ORDER DENYING PETITIONER'S
               Respondent,       )     MOTION TO RECONSIDER TO
12                               )     RECONSIDER DENIAL OF SECTION
         vs.                     )     2255 MOTION AND ORDERING
13                               )     UNITED STATES TO RESPOND TO
                                 )     PETITIONER'S MOTION TO
14  AKOP KRBOYAN,                )     RECONSIDER DENIAL OF WRIT OF
                                 )     ERROR CORAM NOBIS, AND
15                               )     SETTING WRIT OF ERROR CORAM
               Defendant/        )     NOBIS FOR HEARING ON MONDAY,
16             Petitioner.       )     JANUARY 24, 2011 AT 1:30
                                 )     P.M.
17  _____)

18

19

20      Petitioner Akop Krboyan moves for reconsideration of the

21  Order dismissing his motion to vacate, set aside or correct

22  sentence pursuant to 28 U.S.C. § 2255 filed on November 3, 2010

23  or for reconsideration of the denial of his petition for writ of

24  error coram nobis from the bench on June 28, 2010.

25      Petitioner was charged by Superceding Indictment with arson

26  in violation of 18 U.S.C. § 844(h)(1); arson to commit another

                                 1

felony in violation of 18 U.S.C. § 845(i); and seventeen counts
of mail fraud and aiding and abetting in violation of 18 U.S.C.
§§ 1341 and 1342.   Petitioner was convicted by jury trial of all
counts on October 15, 2004.   However, on December 7, 2005,
Petitioner's motion for new trial was granted  on the grounds
that an alibi witness, Wayne Metzger, was located after the
trial, and that Petitioner was unable to understand the
interpreter provided at trial.   (Doc. 186).   Petitioner's new
trial was scheduled to commence on June 13, 2006.   On June 12,
2006, pursuant to a written Plea Agreement, Petitioner pleaded
guilty to Counts 3-19, charging Petitioner with mail fraud.
(Docs. 217, 235).   Pursuant to the Plea Agreement, Petitioner
agreed in pertinent part as follows:

> 3.   <u>Agreements by the Defendant</u>.
>
> ...
>
> (b) The defendant agrees to enter a plea of
> guilty to Counts Three through Nineteen of
> the Second Superseding Indictment, charging
> him with Mail Fraud and Aiding and Abetting,
> in violation of Title 18, United States Code,
> Sections 1341 and 2.   The defendant agrees
> that he is guilty of these charges and that
> the facts set forth in the factual basis of
> this agreement are true and accurate.
>
> ...
>
> (d) The defendant is aware that Title 18,
> United States Code, Section 3742 affords a
> defendant the right to appeal any sentence
> imposed.   Acknowledging this, the defendant
> knowingly and voluntarily agrees to waive all
> Constitutional and statutory rights to appeal
> his conviction and sentence, including, but
> not limited to an express waiver of appeal of
> this plea (including any venue and statute of

limitations issues) and to attack collaterally his mental competence, and his plea, or his sentence, including but not limited to, filing a motion under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or 18 U.S.C. § 3742, or otherwise. ....

...

(k) The defendant agrees to make restitution in the amount of $12,113 to Western Specialty Insurance under terms and conditions set by the Probation Office.

(l) The defendant agrees that the 2000 U.S. Sentencing Guidelines apply to his case and that the base offense level is 6 (2F1.1(a)) and a 3-level increase for a loss of more than $10,000 but less than $20,000 applies (2F1.1(b)(1)(D)).   The defendant further agrees that a 2-level increase in his offense level for More Than Minimal Planning applies, pursuant to 2F.1.1(b)(2).   Finally, the defendant agrees that a 2-level increase to reflect the actual seriousness of the offense based on dismissed charges applies, pursuant to 5K2.21.

The factual basis for the guilty plea set forth in the Plea Agreement is:

The defendant will plead guilty because he is in fact guilty of the crimes set forth in the Second Superseding Indictment.   The defendant also agrees that the following are the facts of the case, although he acknowledges that, as to other facts, the parties may disagree:

Beginning at a time unknown to the grand jury, but no later that [sic] on or about August 31, 2000, to on or about September 28, 2001, in the State and Eastern District of California, and elsewhere, defendant AKOP KRBOYAN devised and intended to devise a scheme and artifice to defraud and obtain money from Western Specialty Insurance, 125 Windsor Drive, #116, Oak Brook, Illinois, by means of false and fraudulent pretenses, representations, or promises regarding the amount of damage, lost revenue and cost of

3

repairs and replacement due to the fire at the Golden Rooster Restaurant, located at 1414 Clovis Avenue, Clovis, California, which fire occurred on or about August 31, 2000.

The purpose of the scheme to defraud was to obtain payment of insurance proceeds on policies written by Western Specialty Insurance for the above-mentioned property.

In furtherance of the scheme to defraud, defendant AKOP KRBOYAN submitted receipts and other documents to his insurance adjusters, Cunningham Lindsey U.S., Inc., 1320 E. Shaw Avenue, Suite 123, Fresno, California, which he claimed to be the amount of damage caused by the fire.

Cunningham Lindsey U.S., Inc., would also meet with the defendant for the purpose of receiving additional information regarding his insurance claim and to negotiate the claim with the defendant.  After these meetings and negotiations with the defendant, Cunningham Lindsey U.S., Inc., would then forward its recommendation for payment to Western Specialty Insurance, Oak Brook, Illinois.

Defendant AKOP KRBOYAN knew that his receipts and other documents, and the information contained therein, would be forwarded to Western Specialty Insurance, Oak Brook, Illinois.  After Western Specialty Insurance conducted a final review of defendant's claim, it would thereafter send payment, by check, to Cunningham Lindsey U.S., Inc., and the defendant would pick up the check at Cunningham Lindsey U.S., Inc.

As a result of the scheme and artifice to defraud as more fully set forth above, the defendant received $12,113 in claims proceeds.

Petitioner was sentenced on September 7, 2006 to imprisonment for a term of 11 months and 16 days and a 36 month term of supervised release.  (Docs. 239, 240, 241).  At Petitioner's sentencing, the

4

following statements were made:

        MR. BACON: But I would implore the Court 12 months is an immigration threshold that could affect his immigration ....

        ...

        MR. BACON: If the Court gives 13 months or over 12 months, then I think we have some serious immigration issues.  We may have immigration issues anyway.  But I would implore the Court then ten months, 11 days in the Fresno County jail - okay - is a lot worse than had the Court given 16 months at a federal institution.

        ...

        MR. NUTTALL: How - to give him any more, or to exceed 12 months, to put him in the jeopardy of INS treatment just doesn't outweigh the good that could come from legitimate just ten month sentence.  And MR. Bacon said and I hadn't even thought of it, ten months and 11 days in the Fresno County Jail is a punishment galore.  He did it.  So we are asking that the Court opt in favor of the humanity here.

        MR. CULLERS: Well, Your Honor, I've got to just respond to that.  There's no certainty of deportation, number one.

        ...

        THE COURT: All right.  So there were 16 counts of conviction.  And the loss is, I think the parties don't dispute the $12,113.

        ...

        I think the real issue is once we get into a range of over 12 months, we're facing the more likelihood of a deportation.  And if that's the government's objective, then I'll accept that on a statement if that's what you want.  And if that's what the plea agreement was premised on, then of course that's something that I could analyze.

1
2
3
4
5
6
7

I think it's a serious crime.  I think if you
16 times act to try to defraud your insurer,
that is an offense that needs to be punished.
And given the amount that the intended loss
was in the $70,000 range and that's what
you're supposed to use under the guidelines,
the intended loss, essentially we'd be a
couple of levels higher if that was done.
Nobody's talked about that, quite frankly,
but I think that's where it is.  An so I
think that the 13 month sentence is the
sentence I'd normally impose.

But now the real question is how badly the
people want Mr. Krboyan deported.  Because if
the sentence goes over 12 months, then that
brings him - it makes it much more likely
that he's on the Immigration & Naturalization
Service's radar.

MR. CULLERS: Well, Your Honor, he's going to
be on the radar anyway.  And I can't speak
for the immigration and customs enforcement.

THE COURT: Oh, I know that.

MR. CULLERS: So I can't speak to how a 12
month or 13 month or 16 month sentence,
whether he's going to be looked at more
carefully or not.  He's going to be on their
radar anyway because he's pled guilty to a
felony involving a false statement where the
amount of loss is over $10,000.  That
automatically puts him on their radar.

THE COURT: All right.  Well, what I'm going
to do is this.  We're really down to
splitting hairs.  My sense of this is I'm
going to give him an 11 month and 20 day
sentence, or I guess that would have to be 19
days because that will give him under a year.
And from that we will determine that will be
a just punishment for the offense.  It will
provide adequate deterrence, it will achieve
- there is no proportionality because there
are no co-defendants.  But it will achieve a
just result.  It will serve the further
purpose of minimizing the adverse immigration
consequences to it.

(Doc. 263).

6

On December 29, 2008, Petitioner moved to terminate supervised release, which motion was granted by Order filed on February 4, 2009.  (Doc. 261).  On April 14, 2010, Petitioner filed a motion to withdraw his guilty plea on the ground that Petitioner was denied the effective assistance of counsel because counsel misadvised petitioner as to the immigration consequences of his guilty plea.  (Doc. 265).  Petitioner's motion was denied from the bench on May 24, 2010.  (Doc. 269).  On June 4, 2010, Petitioner filed a motion to correct judgment and for writ of error coram nobis to correct an error of fact in the judgment and/or a motion for reconsideration of his motion to withdraw his guilty plea.  (Doc. 270).  Petitioner's motion was denied from the bench on June 28, 2010.  (Doc. 275).  AUSA Cullers was ordered to prepare an order consistent with the Court's oral statement of decision but has not yet complied with the Court's order.  On October 27, 2010, Petitioner filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docs. 282-283).  Petitioner's Section 2255 motion was dismissed for lack of jurisdiction by Memorandum Decision and Order filed on November 3, 2010.  (Doc. 283).

In his Section 2255 motion, Petitioner argued that he is entitled to relief because the immigration consequences of Petitioner's guilty plea were not disclosed in the written Plea Agreement and were not mentioned during the change of plea proceedings and, if Petitioner had been advised by counsel that he would automatically be deported as a result of his guilty

plea, Petitioner would not have plead guilty and would have proceeded to trial.  Petitioner asserted that he was entitled to relief under Section 2255 based on ineffective assistance of counsel based on *Padilla v. Kentucky*, ___ U.S. ___, 130 S.Ct. 1473 (2010).

Petitioner's Section 2255 motion was dismissed for lack of jurisdiction because Petitioner, having served his criminal sentence and having terminated his term of supervised release, was not "in custody" for purposes of Section 2255.  In so ruling, the Court stated:

> Section 2255(a) provides:
>
>> A prisoner *in custody* under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the  Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> A petitioner must be "in custody" under the conviction or sentence under attack at the time his petition for writ of habeas corpus is filed.  *Maleng v. Cook*, 490 U.S. 490, 491 (1989).  Here, Petitioner has fully completed the sentence imposed on him by this Court.  In order to invoke habeas review by a federal court, the petitioner must satisfy the jurisdictional "in custody" requirement of Section 2255.  *See Matysek v. United States*, 339 F.2d 389 (9th Cir.1964), *cert. denied*, 381 U.S. 917 (1965); *Scanio v. United States*, 37 F.3d 858, 860 (2nd Cir.1994). In *Maleng v.*

*Cook*, *supra*, the Supreme Court held that a petitioner does not remain "in custody" after the petitioner's sentence has been fully discharged merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which the petitioner may be convicted. 490 U.S. at 492. "While we have very liberally construed the 'in custody' requirement for purposes of federal habeas ... [w]e have never held ... that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." *Id.* "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Id.* As explained in *Abimbola v. United States*, 369 F.Supp.2d 249, 252 (E.D.N.Y.2005):

> Building on the Supreme Court's analysis, other courts have reasoned that the collateral immigration consequences of a petitioner's conviction are not sufficient to satisfy the 'in custody' requirement of Sections 2254 and 2255, even when those consequences include detention by immigration authorities. *See, e.g., Kandiel v. United States,* 964 F.2d 794, 796 (8th Cir.1992)('Because [petitioner's] sentence was fully expired by the time he filed his Section 2255 motion and the current deportation proceeds against him are merely a collateral consequence of his conviction, he is not 'in custody' for the purposes of Section 2255.'); *United States v. Esogbue,* 357 F.3d 532, 534 (5th Cir.2004)(finding that a petitioner did not satisfy the 'in custody' requirement of Section 2255 even though he was facing the collateral consequence of deportation); *Cuevas*

1    *v. People,* 2007 WL 206985
2    (S.D.N.Y.2002)('A habeas petitioner
     who has completed his sentence and
     was the subject of an INS
3    deportation order cannot attack his
     underlying state court criminal
4    conviction in a federal habeas
     corpus proceeding because he was no
5    longer in custody with respect to
     the expired state conviction.');
6    *Adegbuji v. United States*, 2003 WL
     21961122 (S.D.N.Y.2003)(holding
7    that petitioner's 'current INS
     incarceration is a collateral
8    consequence of his convictions for
     the purposes of Section 2255'
9    insufficient to satisfy the 'in
     custody' requirement of that
10   statute.

11        Petitioner moves for reconsideration based on *Padilla v.*

12   *Kentucky*, *supra*.

13        In *Padilla*, the defendant, convicted by guilty plea on drug-

14   related charges in the Commonwealth of Kentucky, filed a motion

15   for post-conviction relief, alleging that his defense attorney

16   was ineffective by misadvising him about the potential for

17   deportation as a consequence of his guilty plea.  The Supreme

18   Court held that defense counsel engaged in deficient performance

19   by failing to advise the defendant that his plea of guilty made

20   him subject to automatic deportation and that defendant's claim

21   was subject to the *Strickland* ineffective assistance of counsel

22   test.  After noting that the Supreme Court has never applied a

23   distinction between direct and collateral consequences to define

24   the scope of constitutionally reasonable professional assistance

25   under *Strickland*, and declining to address the distinction

26   because of the unique nature of deportation, the Supreme Court

                                    10

ruled:

> We have long recognized that deportation is a
> particularly severe 'penalty,' ... but it is
> not, in a strict sense, a criminal sanction.
> Although removal proceedings are civil in
> nature, ... deportation is nevertheless
> intimately related to the criminal process.
> Our law has enmeshed criminal convictions and
> the possibility of deportation for nearly a
> century ... And, importantly, recent changes
> in our immigration law have made removal
> nearly an automatic result for a broad class
> of noncitizen offenders.  Thus, we find it
> 'most difficult' to divorce the penalty from
> the conviction in the deportation context ...
> Moreover, we are quite confident that
> noncitizen defendants facing a risk of
> deportation for a particular offense find it
> even more difficult ....
>
> Deportation as a consequence of a criminal
> conviction is, because of its close
> connection to the criminal process, uniquely
> difficult to classify as either a direct or a
> collateral consequence.  The collateral
> versus direct distinction is thus ill-suited
> to evaluating a *Strickland* claim concerning
> the specific risk of deportation.  We
> conclude that advice regarding deportation is
> not categorically removed from the ambit of
> the Sixth Amendment right to counsel.
> *Strickland* applies to Padilla's claim.

130 S.Ct. at 1481-1482.  The Supreme Court concluded:

> It is our responsibility under the
> Constitution to ensure that no criminal
> defendant - whether a citizen or not - is
> left to the 'mercies of incompetent counsel.'
> ... To satisfy this responsibility, we now
> hold that counsel must inform her client
> whether his plea carries a risk of
> deportation.  Our longstanding Sixth
> Amendment precedents, the seriousness of
> deportation as a consequence of a criminal
> plea, and the concomitant impact of
> deportation on families living lawfully in
> this country demand no less.
>
> Taking as true the basis for his motion for

> postconviction relief, we have little
> difficulty concluding that Padilla has
> sufficiently alleged that his counsel was
> constitutionally deficient.  Whether Padilla
> is entitled to relief will depend on whether
> he can demonstrate prejudice as a result
> thereof, a question we do not reach because
> it was not passed on below.

130 S.Ct. at 1486-1487.

*Padilla* does not address the "in custody" requirement of

Section 2255.  At the time Padilla challenged his state

conviction, he was in state custody on that conviction.  *See*

*Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky.2008).  In

*Resendez v. Kovensky*, 416 F.3d 952 (9th Cir.)*, cert. denied*, 546

U.S. 1043 (2005), the Ninth Circuit rejected the petitioner's

contention that he was in custody pursuant to the judgment of a

state court for purposes of 28 U.S.C. § 2254 because of his

transfer to INS custody after serving a state sentence for a drug

trafficking crime was the direct and mandatory consequence of the

state court judgment:

> ... This 'in custody' requirement has been
> interpreted to mean that federal courts lack
> jurisdiction over habeas corpus petitions
> unless the petitioner is 'under the
> conviction or sentence under attack at the
> time his petition is filed.'  *Maleng v. Cook*,
> 490 U.S. 488, 490-91 (1989) ....
>
> It is well-established that 'once the
> sentence imposed for a conviction has
> completely expired, the collateral
> consequences of the conviction are *not
> themselves sufficient to render an individual
> "in custody" for the purposes of a habeas
> attack* upon it.' ... Immigration
> consequences, such as deportation, have long
> been viewed as 'collateral,' and thus are not

12

> themselves sufficient to render an individual
> 'in custody.' ... While *Maleng* noted that
> collateral consequences could prevent a
> petition- filed while the petitioner was in
> state custody - from becoming moot after a
> petitioner is released from custody, *Maleng*
> foreclosed any argument that collateral
> consequences could satisfy the in custody
> requirement for a petition filed after the
> expiration of a state sentence.

416 F.3d at 956.  Petitioner's attempt to distinguish these cases
is without merit.

Petitioner's motion for reconsideration of the dismissal of
his Section 2255 motion is DENIED.

Alternatively, Petitioner moves for reconsideration of the
denial of Petitioner's petition for writ of error coram nobis in
light of *Padilla.*

On June 4, 2010, Petitioner filed a "Motion to Correct
Judgment (F.R.C.P. 35(a)); Writ of Error Coram Nobis to Correct
Error of Fact in Judgment and/or Motion for Reconsideration of
Defendant's Motion to Withdraw Guilty Plea."   In this motion,
Petitioner cited *Padilla* and argued, *inter alia*:

> As the court stated in its holding when
> defendant first moved to withdraw the plea,
> he was aware that there were immigration
> consequences associated with his plea of
> 'guilty.'  What is also clear, however, is
> that none of the parties, including the
> court, was aware that a finding of a loss in
> excess of $10,000 resulting in a finding of
> the charge of an 'aggravated felony,' which
> required mandatory deportation.  As such, the
> court in *Padilla* requires counsel to give the
> correct advice to a client who is entering a
> plea when the deportation consequences of
> such a plea are in fact clear.  In this case,
> MR. Krboyan's plea resulted in a finding that
> the matter was an 'aggravated felony,'

13

requiring mandatory deportation, not simply
'placing him on immigration's radar' as any
guilty plea to a criminal charge would place
a non-citizen.

Clearly, none of the parties wishes to re-
litigate the charges, the events of which
occurred 10 years ago.  Defendant Krboyan
would strenuously argue that the proper
solution is to correct the factual error that
thee victim sustained a loss in excess of
$10,000.00.  By doing that, the true facts
would be set forth in the judgment and the
determination of whether or not he is to be
deported would not be based on a falsehood.

In support of the writ, Petitioner filed a declaration in which

he averred:

That my attorney at the time I entered my
'guilty' plea was Roger Nuttall.

That in discussions with MR. Nuttall
regarding the proposed plea to various counts
of mail fraud, I was informed that if my
sentence was lower than one year, I would not
be subject to mandatory deportation.

That we attempted to negotiate a plea that
would require a sentence lower than one year,
but the government would not agree.

I agreed to enter my plea of 'guilty,' hoping
that the court would sentence me to less than
one year in custody, which it did do.

I am presently in custody awaiting a
deportation hearing, and have been informed
that because my plea agreement set forth the
loss in the case was in excess of $10,000, I
am subject to deportation.

That had I known or been made aware that
acknowledging a loss in excess of $10,000
would subject me to mandatory deportation, I
would never have entered the plea.

That in fact there was no loss, as the sums
paid by the insurance company of
approximately $12,000 were based upon the

14

> assessment of the actual damages occurring
> from the fire.
>
> No restitution was ordered, as the insurance
> company suffered no loss, but a fine was
> imposed which was the same amount of money
> paid by the insurance company to me for the
> loss in the case.
>
> I would ask the court to ... make a finding
> that in fact there was no loss and therefore
> this matter would not be classified as an
> aggravated felony.

On November 30, 2010, an Immigration Law Judge ordered Petitioner

removed from the United States to Armenia; Petitioner's

applications for asylum and waiver under Section 1182 were

denied.  Petitioner's appeal from this decision was reserved.

(Doc. 285).  MR. Nuttall, in support of Petitioner's Section 2255

motion, avers that Petitioner signed the Plea Agreement and

entered the guilty plea based on MR. Nuttall's legal advice:

> 6.  That based upon my independent
> recollection and upon my recollection having
> been refreshed by the review of documents,
> foremost in my mind during settlement
> negotiations and the entry of the plea was
> the need for MR. Krboyan to avoid immigration
> consequences by being sentenced to less than
> one year in custody.
>
> 7.  That during this same period of time, I
> was seeking on behalf of MR. Krboyan, what I
> believed was a legitimate loss figure of less
> than $10,000.00 in order to avoid a Guideline
> range of between ten and sixteen months, as I
> recall.
>
> 8.  That the prosecution declined to consider
> a stipulation of a loss figure of less than
> $12,113.00.
>
> 9.  That during this same period of time,
> while I recognized that a loss of over
> $10,000.00 might implicate immigration

1      proceedings, I did not advise MR. Krboyan
         that a loss exceeding $10,000.00 would, in
2      and of itself, make deportation mandatory.

3      10.  That as a matter of fact, I advised MR.
         Krboyan that I doubted that a loss of
4      $10,000.00 alone would cause him to be
         deported.  That at the time of the plea and
5      at the time of the sentencing, I never
         advised MR. Krboyan, nor was I aware that
6      with a less than one year term of
         imprisonment with a loss of $10,000.00 or
7      more, there would exist an aggravated felony
         such that automatically, he would be
8      subjected to mandatory deportation.

9      ...

10     11.  That based upon my review of the file, I
        had previously expressed concerns to the
11     Court, after the plea and prior to
        sentencing, in a sentencing memorandum, that
12     the loss figure in excess of $10,000.00 might
        subject MR. Krboyan to immigration
13     proceedings subject only to my stated belief
        that the loss figure alone would not make
14     deportation mandatory.

15  (Doc. 282-7).  Also submitted in support of the Section 2255

16  motion was the declaration of Daniel Bacon, Petitioner's defense

17  counsel during the jury trial:

18     I was present during some of the discussions
        between counsel Roger Nuttall and MR. Krboyan
19     regarding the proposed government plea offer.
        Of particular concern was the government's
20     demand that the loss figure be stipulated to
        be in the sum of $12,113.00, which set a
21     guideline range of 10 to 16 months in
        custody.
22
        Discussions were had between the parties that
23     since there was no actual loss, i.e., MR.
        Krboyan had not pled to arson, and the
24     insurance [sic] itself had determined that
        the damages were in fact in the sum of
25     $12,113.00, the government should agree to a
        lesser loss figure so that MR. Krboyan would
26     be assured that he would have to serve no

1    further time in custody.

2    Also discussed was the fact that should the
     court impose a term in excess of one year,
3    MR. Krboyan would be facing substantial
     immigration consequences.  At no time,
4    however, was I present when any discussions
     were had that a loss figure in excess of
5    $10,000.00 would be classified as a [sic]
     'aggravated felony' and require mandatory
6    deportation.

7    It is my understanding that MR. Nuttall
     attempted to negotiate with the government to
8    get a lower loss figure to assure a sentence
     of under one year, but that the government
9    was unwilling to agree, and in light of the
     factors involved in retrying the matter, MR.
10   Krboyan decided to accept the plea as offered
     by the government.

11
     I attended the sentencing wherein the court
12   discussed the immigration consequences of
     sentencing MR. Krboyan to more than one year,
13   and the court's decision to sentence him to a
     term of less than one year due to the
14   discussions had by all counsel regarding the
     immigration consequences of his plea.

15
     I have reviewed the transcripts in the
16   matter, and noted that Assistant United
     States Attorney Mark CULLERS did state that
17   the plea itself with a loss in excess of
     $10,000.00 would put MR. Krboyan on the
18   immigration radar screen.  I was unaware,
     however, that the fact of a loss in excess of
19   $10,000 which was contained in the plea
     agreement, and discussed at the time the plea
20   was entered into, would be classified as an
     aggravated felony requiring mandatory
21   deportation.

22   I have subsequently come to learn this fact,
     but was unaware of it at the time MR. Krboyan
23   entered his plea.

24   (Doc. 282-9).

25       8 U.S.C. § 1227(a)(2)(A)(iii) provides that "[a]ny alien who

26   is convicted of an aggravated felony at any time after admission

                                17

is deportable."  An "aggravated felony" is defined to include an offense that "involves fraud or deceit in which the loss to the victim or victim exceeds $10,000."  8 U.S.C. § 1101(a)(43)(M)(i). 8 U.S.C. § 1182(h) provides that no waiver of deportation shall be granted "in the case of an alien lawfully admitted for permanent residence if ... since the date of such admission the alien has been convicted of an aggravated felony."[1]

To qualify for error coram nobis relief, four requirements must be satisfied: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case or controversy requirement of Article III, and (4) the error is of the most fundamental character.  *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir.2005).

Here, Petitioner satisfies the first requirement that a more usual remedy is not available to him, because he is not in custody and, therefore, ineligible for relief under Section 2255. *Kwan*, *id.*, at 1012.

As to the second requirement, *Kwan* explains:

> 'Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations.' ... In lieu of a specific statute of limitations, courts have required coram nobis petitioners to provide valid or

---

[1] Petitioner cites no statutory authority to support his contention that his deportation is mandatory.  The Court's research indicates that mandatory deportation is required by 8 U.S.C. § 1182(h).

18

sound reasons explaining why they did not attack their sentences or convictions earlier ... Similarly, in *Telink*, we explained that a coram nobis petition 'is subject to the equitable doctrine of laches ... [which] bars a claim if unreasonable delay causes prejudice to the defendant.' ... If a respondent seeks dismissal of a coram nobis petition on the ground of laches, the respondent bears the burden of showing he was prejudiced by the petitioner's delay ....

While courts have not elaborated on what constitutes a 'sound' reason, our review of coram nobis cases reveals that courts have denied relief on this ground where the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ ....

In the instant case, Kwan has provided a reasonable explanation for not challenging his conviction earlier, the government has failed to demonstrate prejudice, and Kwan is not abusing the writ - he is not attempting to re-litigate claims or circumvent procedural bars.  Although the district court found that Kwan's reasons for delaying were not sound, we disagree.  In reaching its conclusion, the district court reasoned that Kwan's delay was not justified because the Service first notified Kwan that it considered him removable on the basis of his conviction in May, 1997, and Kwan could have challenged his conviction by filing a § 2255 motion at that time.  However, Kwan explained that he did not pursue habeas relief in 1997 because he retained immigration counsel, and that counsel advised him to challenge the INS's determination that Kwan's conviction was an aggravated felony ... as indicated in Kwan's first Notice to Appear.  Given the fact that defense counsel had advised him that there was little chance his conviction would cause him to be deported, Kwan's decision to focus on challenging his deportation on the basis of that conviction was reasonable.  Only after the INS re-initiated removal proceedings against Kwan and determined that his conviction was an

> aggravated felony ... did Kwan have reason to
> conclude that his criminal defense counsel
> had in fact erred and affirmatively misled
> him by advising him that there was 'no
> serious possibility' that his conviction
> would cause him to be deported.
>
> Although it may be been more prudent of Kwan
> to collaterally attack his conviction
> earlier, his course of action was reasonable.
> The law does not require Kwan to challenge
> his conviction at the earliest opportunity,
> it only requires Kwan to have sound reasons
> for not doing so.
>
> In sum, because there is no statute of
> limitations for coram nobis petitions, Kwan
> has provided sound reasons for not
> challenging his conviction earlier, Kwan is
> not attempting to abuse the writ of coram
> nobis, and the government has not even
> suggested that Kwan's delay caused it any
> prejudice, we decline to find Kwan ineligible
> for relief based solely on the fact that he
> could have, but did not, collaterally attack
> his conviction earlier.

407 F.3d at 1012-1014.  Here, Petitioner asserts that this

element is satisfied because he did not become aware of the

automatic deportation he faced until he was actually detained by

ICE.  In its initial opposition to the petition for error coram

nobis, the United States did not specifically argue prejudice to

it, but focused on the fact that Petitioner was always aware that

his guilty plea would have immigration consequences and that he

was specifically advised at sentencing that a loss greater than

$10,000 based on fraud was an aggravated felony having adverse

immigration consequences.  This element remains disputed.

The *Kwan* Court that the possibility of deportation is an

adverse consequence of the conviction sufficient to satisfy

Article III's case or controversy requirement. *Id.* at 1014.
Petitioner satisfies this element.

*Kwan* ruled that a coram nobis petitioner may satisfy the
fundamental error requirement by establishing that he received
ineffective assistance of counsel. As to the deficient
performance aspect of the *Strickland* test, the Ninth Circuit
concluded that counsel's performance was objectively unreasonable
and met the first prong of the *Strickland* test:

> We agree that where, as here, counsel has not
> merely failed to inform, but has effectively
> misled, his client about the immigration
> consequences of a conviction, counsel's
> performance is objectively unreasonable under
> contemporary standards for attorney
> competence. Here, Kwan *asked* counsel whether
> pleading guilty would cause him to be
> deportable, and counsel chose to advise him.
> Moreover, counsel represented himself as
> having expertise on the immigration
> consequences of criminal convictions.
> Subsequently, counsel either failed to keep
> abreast of relevant and significant changes
> in the law or failed to inform Kwan of those
> changes' effect on the deportation
> consequences of Kwan's conviction. In either
> case, counsel never advised Kwan of the
> options that remained open to him prior to
> sentencing, and counsel never informed the
> sentencing judge that a sentence only two
> days shorter than the sentence ultimately
> imposed would enable Kwan to avoid
> deportation and remain united with his
> family.
>
> That counsel may have misled Kwan out of
> ignorance is no excuse. It is a basic rule
> of professional conduct that a lawyer must
> maintain competence by keeping abreast of
> changes in the law and its practice ...
> Although counsel was a criminal defense
> attorney and not an immigration attorney,
> counsel made an affirmative representation to
> Kwan that he had knowledge and experience

21

regarding the immigration consequences of
criminal convictions; as a result, counsel
had a professional responsibility to inform
himself and his client of significant changes
in the law that drastically affected the
immigration consequences of his client's plea
....

...

Despite counsel's knowledge that the
likelihood of deportation was a significant
factor considered by Kwan when he was
deciding whether to plead guilty, counsel
never informed Kwan that IIRIRA rendered his
previous assessment of the risk grossly
inaccurate.  As noted above, after IIRIRA,
Kwan's conviction would create a near-certain
risk of deportation, unless he received a
prison term of less than one year.  Although
IIRIRA was enacted before Kwan's sentencing
hearing was scheduled, counsel never advised
Kwan that the option of moving to withdraw
his plea was viable, so long as he moved
prior to sentencing ... Counsel never
explored the possibility of renegotiating the
plea agreement with the prosecution so as to
avoid the deportation consequences.  Nor did
counsel inform the sentencing judge that Kwan
would almost certainly be deported if he was
sentenced to a year or more in prison.

*Id.* at 1015-1017.  As the prejudice prong of the *Strickland* test,

i.e., whether there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding

would have been different, the Ninth Circuit ruled:

Kwan alleges that, but for counsel's
deficient performance, the outcome of his
proceedings would have differed in two ways.
Specifically, Kwan alleges that 'had he known
what constituted an "aggravated felony," he
would have discussed with his lawyer the
possibility of amending his plea agreement or
asking the [sentencing] court for a downward
departure.'  Although the sentencing judge
would not have had the discretion to grant a
downward departure solely on the basis of

immigration consequences ..., Kwan was potentially eligible for downward departures on other grounds.  Had counsel and the court been aware that a nominally shorter sentence would enable Kwan to avoid deportation, there is a reasonable probability that the court would have imposed a sentence of less than one year.

In addition, Kwan explains that, had he been made aware of the deportation consequences of his conviction, he would have explored the option of renegotiating his plea agreement. That Kwan asked counsel about the immigration consequences of pleading guilty before agreeing to do so demonstrates clearly 'that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty.' ... Kwan has also gone to great lengths to avoid deportation and separation from his wife and children, who are all United States citizens.  Taken together, these facts establish that but for counsel's deficient performance, there is a reasonable probability that Kwan would have moved to withdraw his guilty plea.  After withdrawing his plea, Kwan could have gone to trial or renegotiated his plea agreement to avoid deportation; he could have pled guilty to a lesser charge, or the parties could have stipulated that Kwan would be sentenced to less than one year in prison.

... [A] sentencing court may exercise its discretion to permit a defendant to withdraw his guilty plea prior to sentencing if the defendant shows a fair and just reason for requesting the withdrawal ... There is a reasonable probability that the sentencing court in this case would have considered the significant change in the immigration consequences of Kwan's plea to be a fair and just reason for withdrawing his plea.  While the sentencing court's decision to grant or deny a motion to withdraw is discretionary, 'to show prejudice [Kwan] need only show "a probability sufficient to undermine confidence in the outcome"' that he could have withdrawn his plea ... 'A deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's

23

> favor can constitute ineffective assistance
> of counsel.' ....
>
> For the foregoing reasons, we conclude that
> Kwan has established his claim of ineffective
> assistance of counsel under *Strickland*, which
> is fundamental error.  Because Kwan satisfied
> all four requirements for coram nobis relief,
> we reverse and remand to the district court
> with instructions to issue the writ, vacate
> Kwan's sentence, and impose a sentence of one
> day less than one year.

*Id.* at 1017-1018.

Here, the record establishes that Mr. Nuttall's performance arguably was deficient under the first prong of the *Strickland* test.  Petitioner, as a lawful permanent resident, pleaded guilty to numerous counts of mail fraud under the mistaken advice of counsel that Petitioner's chances of deportation would be reduced if he received a sentence of less than one year.  However, because the amount Petitioner pleaded guilty to receiving as a result of his scheme to defraud the insurance company was in excess of $10,000, the crime of conviction is an aggravated felony and Petitioner's deportation became mandatory, a result neither Mr. Nuttall or Petitioner were aware at the time of the plea and sentencing, even though the prosecutor that Petitioner was going to be on INS's radar "because he's pled guilty to a felony involving a false statement where the amount of loss is over $10,000."  (Doc. 263, 31:7-12).

The real issue before the Court is whether Petitioner has demonstrated the prejudice prong of the *Strickland* test.  As noted above, in seeking coram nobis relief, Petitioner does not

want to withdraw his guilty plea; rather, he wants to change the
factual basis of his guilty plea to provide that there was no
loss to the insurance company because of his scheme to defraud.
Petitioner's contention is based on the fact that he did not
plead guilty to arson and, therefore, the insurance company
merely paid Petitioner the legitimate losses from the fire.
Essentially, Petitioner is contending that he is not guilty of
the crime to which he plead guilty pursuant to the Plea
Agreement.   Petitioner wants his cake and to eat it too.
However, as noted, Petitioner did move to withdraw his guilty
plea, which was denied by the Court.   Petitioner makes no showing
that he would have moved to withdraw his guilty plea before
sentencing if he had realized the immigration consequences of the
crime to which he pled guilty.   Nonetheless, Petitioner
eventually moved to do so.   The Court cannot and should not grant
a writ of error coram nobis which changes the true facts to which
Petitioner pleaded guilty to show that there was no monetary loss
to the insurance company.   When questioned during the change of
plea proceedings and at sentencing, there was no denial by
Petitioner of the loss or the fraud.   Such a result makes a
mockery of the change of plea proceedings and, as stated,
essentially means Petitioner is not guilty of the crime to which
he pleaded guilty.   However, it is arguable that Petitioner, if
the writ of error coram nobis is granted, may be allowed to
withdraw his guilty plea and go to trial on the charges against
him or he may attempt to re-negotiate a plea agreement.

25

1     The element of denial of a fundamental right is disputed.

2     The United States has not had the opportunity to respond to

3 Petitioner's motion for reconsideration of the denial of the writ

4 of error coram nobis.  The Court will not resolve this matter in

5 the absence of the United States' position.  The United States is

6 ordered to a response to Petitioner's motion for reconsideration

7 on or before January 12, 2011.  Petitioner's reply, if any, shall

8 be filed on January 19, 2011.  The matter shall be heard on

9 Monday, January 24, 2011 at 1:30 p.m.

10    IT IS SO ORDERED.

11 Dated:   December 30, 2010            /s/ Oliver W. Wanger
                                  UNITED STATES DISTRICT JUDGE