UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Respondent,<br><br>vs.<br><br>AKOP KRBOYAN,<br><br>    Defendant-Petitioner. | 1:02-cr-05438 OWW<br>(1:10-cv-02016 OWW)<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO RECONSIDER WRIT OF ERROR CORAM NOBIS<br><br>(DOCS. 284, 292) |

## I.   INTRODUCTION

Petitioner Akop Krboyan ("Petitioner") moves for reconsideration of the denial of his petition for writ of error coram nobis. Docs. 284, 292. The United States filed an opposition (Doc. 289), to which Petitioner replied (Doc. 290). Petitioner filed a supplemental memorandum (Doc. 292), which the United States opposed (Doc. 293).

## II.   BACKGROUND

Petitioner was charged by Superceding Indictment with arson in violation of 18 U.S.C. § 844(h)(1); arson to commit another felony in violation of 18 U.S.C. § 845(i); and seventeen counts of mail fraud and aiding and abetting in violation of 18 U.S.C. §§ 1341 and 1342. Petitioner was convicted by jury trial of all counts on October 15, 2004. On December 7, 2005, Petitioner's motion for new trial was granted because an alibi witness, Wayne Metzger, was located after the trial, and Petitioner was unable to understand the interpreter provided at trial, who spoke a different dialect of Armenian. Doc. 186. Petitioner's new trial

1

was scheduled to commence on June 13, 2006. On June 12, 2006,

pursuant to a written plea agreement, Petitioner pleaded guilty

to Counts 3-19, charging Petitioner with mail fraud. Docs. 217,

235.

Pursuant to the plea agreement, Petitioner agreed in

pertinent part:

3. <u>Agreements by the Defendant</u>.

...

(b) The defendant agrees to enter a plea of guilty to
Counts Three through Nineteen of the Second Superseding
Indictment, charging him with Mail Fraud and Aiding and
Abetting, in violation of Title 18, United States Code,
Sections 1341 and 2.  The defendant agrees that he is
guilty of these charges and that the facts set forth in the
factual basis of this agreement are true and accurate.

...

(d) The defendant is aware that Title 18, United States
Code, Section 3742 affords a defendant the right to appeal
any sentence imposed.  Acknowledging this, the defendant
knowingly and voluntarily agrees to waive all
Constitutional and statutory rights to appeal his
conviction and sentence, including, but not limited to an
express waiver of appeal of this plea (including any venue
and statute of limitations issues) and to attack
collaterally his mental competence, and his plea, or his
sentence, including but not limited to, filing a motion
under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or 18 U.S.C. §
3742, or otherwise. ....

...

(k) The defendant agrees to make restitution in the amount
of $12,113 to Western Specialty Insurance under terms and
conditions set by the Probation Office.
(l) The defendant agrees that the 2000 U.S. Sentencing
Guidelines apply to his case and that the base offense
level is 6 (2F1.1(a)) and a 3-level increase for a loss of
more than $10,000 but less than $20,000 applies
(2F1.1(b)(1)(D)).  The defendant further agrees that a 2-
level increase in his offense level for More Than Minimal
Planning applies, pursuant to 2F.1.1(b)(2).  Finally, the
defendant agrees that a 2-level increase to reflect the
actual seriousness of the offense based on dismissed

2

1    charges applies, pursuant to 5K2.21.

2    Doc. 282-2, 4-8. The factual basis for the guilty plea

3    set forth in the plea agreement is:

4        4.  <u>Factual Basis</u>

5
     The defendant will plead guilty because he is in fact
6    guilty of the crimes set forth in the Second Superseding
     Indictment.  The defendant also agrees that the following
7    are the facts of the case, although he acknowledges that,
     as to other facts, the parties may disagree:
8
     Beginning at a time unknown to the grand jury, but no later
9    that [sic] on or about August 31, 2000, on or about
     September 28, 2001, in the State and Eastern District of
10   California, and elsewhere, defendant AKOP KRBOYAN devised
     and intended to devise a scheme and artifice to defraud and
11   obtain money from Western Specialty Insurance, 125 Windsor
     Drive, #116, Oak Brook, Illinois, by means of false and
12   fraudulent pretenses, representations, or promises
     regarding the amount of damage, lost revenue and cost of
13   repairs and replacement due to the fire at the Golden
     Rooster Restaurant, located at 1414 Clovis Avenue, Clovis,
14   California, which fire occurred on or about August 31,
     2000.
15
     The purpose of the scheme to defraud was to obtain payment
16   of insurance proceeds on policies written by Western
     Specialty Insurance for the above-mentioned property.
17
     In furtherance of the scheme to defraud, defendant AKOP
18   KRBOYAN submitted receipts and other documents to his
     insurance adjusters, Cunningham Lindsey U.S., Inc., 1320 E.
19   Shaw Avenue, Suite 123, Fresno, California, which he
     claimed to be the amount of damage caused by the fire.
20
     Cunningham Lindsey U.S., Inc., would also meet with the
21   defendant for the purpose of receiving additional
     information regarding his insurance claim and to negotiate
22   the claim with the defendant.  After these meetings and
     negotiations with the defendant, Cunningham Lindsey U.S.,
23   Inc., would then forward its recommendation for payment to
     Western Specialty Insurance, Oak Brook, Illinois.
24
     Defendant AKOP KRBOYAN knew that his receipts and other
25   documents, and the information contained therein, would be
     forwarded to Western Specialty Insurance, Oak Brook,
26   Illinois.  After Western Specialty Insurance conducted a
     final review of defendant's claim, it would thereafter send
27   payment, by check, to Cunningham Lindsey U.S., Inc., and
     the defendant would pick up the check at Cunningham Lindsey
28
                              3

1      U.S., Inc.

2          As a result of the scheme and artifice to defraud as more
       fully set forth above, the defendant received $12,113 in
3      claims proceeds.

4  Doc. 282-2, 9-10.

5          Petitioner was sentenced on September 7, 2006 to

6  imprisonment for a term of 11 months and 16 days and a 36-month

7  term of supervised release. Docs. 239, 240, 241. At Petitioner's

8  sentencing, the following statements were made:

9          MR. BACON: But I would implore the Court 12 months is an
       immigration threshold that could affect his immigration
10     ....

11         ...

12         MR. BACON: If the Court gives 13 months or over 12 months,
       then I think we have some serious immigration issues. We
13     may have immigration issues anyway. But I would implore the
       Court then ten months, 11 days in the Fresno County jail -
14     okay - is a lot worse than had the Court given 16 months at
       a federal institution.
15
16  Doc. 263, 14-16.

17         MR. NUTTALL: How - to give him any more, or to exceed 12
       months, to put him in the jeopardy of INS treatment just
18     doesn't outweigh the good that could come from legitimate
       just ten month sentence. And Mr. Bacon said and I hadn't
19     even thought of it, ten months and 11 days in the Fresno
       County Jail is a punishment galore. He did it. So we are
20     asking that the Court opt in favor of the humanity here.

21         MR. CULLERS: Well, Your Honor, I've got to just respond to
       that. There's no certainty of deportation, number one.
22
   Id. at 24.
23
           THE COURT: All right. So there were 16 counts of
24     conviction. And the loss is, I think the parties don't
       dispute the $12,113.
25
   Id. at 26.
26
           [THE COURT:] I think the real issue is once we get into a
27     range over 12 months, we're facing the more likelihood of a
       deportation. And if that's the government's objective, then
28     I'll accept that on a statement if that's what you want.

                                      4

1    And if that's what the plea agreement was premised on, then
     of course that's something that I could analyze. My sense
2    is that a mid range sentence in this case, to me, is
     sufficient. I think that the ten months is on the light
3    side, but if this were any case I'd impose a 13 month
     sentence in this case. That's the mid range of the
4    guidelines.

5    I think it's a serious crime. I think if you 16 times act to
     try to defraud your insurer, that that is an offense that
6    needs to be punished. And given the amount that the intended
     loss was in the $70,000 range and that's what you're
7    supposed to use under the guidelines, the intended loss,
     essentially we'll be a couple of levels higher if that was
8    done. Nobody's talked about that, quite frankly, but I think
     that's where it is. And so I think that the 13 month
9    sentence is the sentence I'd normally impose.

10
     But now the real question is how badly the people want Mr.
11   Krboyan deported. Because if the sentence goes over 12
     months, then that brings him -- it makes it much more likely
12   that he's on the Immigration & Naturalization Service's
     radar.
13

14   MR. CULLERS: Well, Your Honor, he's going to be on the radar
     anyway. And I can't speak for the immigration and customs
15   enforcement.

16
     THE COURT: Oh, I know that.
17
     MR. CULLERS: So I can't speak to how a 12 month or 13 month
18   or 16 month sentence, whether he's going to be looked at
     more carefully or not. He's going to be on their radar
19   anyway because he's pled guilty to a felony involving a
     false statement where the amount of loss is over $10,000.
20   That automatically puts him on their radar.

21
     THE COURT: All right. Well, what I'm going to do is this.
22   We're really down to splitting hairs. My sense of this is
     I'm going to give him an 11 month and 20 day sentence, or I
23   guess it would have to be 19 days because that will give him
     one day under a year. And from there we will determine that
24   that will be just punishment for the offense. It will
     provide adequate deterrence, it will achieve -- there is no
25   proportionality because there are no co-defendants. But it
     will achieve a just result. It will serve the further
26   purpose of minimizing the adverse immigration consequences
     to it.
27

28
                               5

*Id.* at 30-31. On December 29, 2008, Petitioner moved to terminate supervised release, which motion was granted by Order filed on February 4, 2009. Doc. 261.

On February 8, 2010, Petitioner received a notice of removal proceedings and was detained by the Department of Homeland Security. Doc. 282-6. On April 14, 2010, Petitioner filed a motion to withdraw his guilty plea on the ground that Petitioner was denied the effective assistance of counsel, as Petitioner's counsel misadvised him of the immigration consequences of his guilty plea. Doc. 265. Petitioner's motion was denied from the bench on May 24, 2010. Doc. 269.

On June 4, 2010, Petitioner filed a motion to correct judgment and for writ of error coram nobis to correct an error of fact in the judgment and/or a motion for reconsideration of his motion to withdraw his guilty plea. Doc. 270. Petitioner's motion was denied from the bench on June 28, 2010. Doc. 275.

On October 27, 2010, Petitioner filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Docs. 282-283. Petitioner's Section 2255 motion was dismissed for lack of jurisdiction by memorandum decision and order dated November 3, 2010, because Petitioner had served his criminal sentence, terminated his term of supervised release, and was not "in custody" for purposes of Section 2255. Doc. 283.

On November 12, 2011, Petitioner filed a motion to reconsider his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and motion to reconsider his writ of error coram nobis. Doc. 284. On December 1, 2011, Petitioner supplemented his motion with an order to remove Petitioner from the United States, issued by the Department of Homeland Security Immigration Court on November 30, 2010. By memorandum decision and order dated December 30, 2010, Petitioner's motion for reconsideration of the dismissal of his Section 2255 motion was denied. The United States was ordered to respond to Petitioner's motion to reconsider writ of error coram nobis. The United States filed an opposition to Petitioner's motion to reconsider writ of error coram nobis on January 12, 2011 (Doc. 289), to which Petitioner replied (Doc. 290). A hearing on the motion to reconsider writ of error coram nobis was held on January 24, 2011. Without leave from the court, Petitioner filed a supplemental memorandum on the motion to reconsider writ of error on January 27, 2011 (Doc. 292), which the United States opposed (Doc. 293).

### III. LEGAL STANDARD

"The writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *Estate of McKinney By & Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995). "The writ

provides a remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'" *United States v. Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989) (quoting *Yasai v. United States*, 772 F.2d 1496, 1498, 1499 & n.2 (9th Cir. 1985). The writ permits a court to vacate its judgment when an error has occurred that is of the most fundamental character such that the proceeding itself is rendered invalid. *McKinney*, 71 F.3d at 781. The Supreme Court and Ninth Circuit have "long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007).

To qualify for error coram nobis relief, four requirements must be satisfied: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case or controversy requirement of Article III, and (4) the error is of the most fundamental character. *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987).

IV.  <u>ANALYSIS</u>

A.  <u>More Usual Remedy</u>

Petitioner satisfies the first requirement for error coram nobis relief. Because Petitioner is no longer in custody and

8

ineligible for relief under Section 2255, it is undisputed that Petitioner does not have a more usual remedy available to him. *United States v. Kwan*, 407 F.3d 1005, 1012 (9th Cir. 2005) (concluding that petitioner "satisfied the first requirement, that 'a more usual remedy is not available' to him, by establishing that he is not in custody and, as a result, not eligible for habeas relief or § 2255 relief."), *abrogated on other grounds by Padilla v. Kentucky*, ---U.S.---, 130 S.Ct. 1473 (2010).

      **B.   Failure to Attack Conviction Earlier**

      "Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations." *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994). Rather, petitioners must provide "valid or sound reasons" why they did not attack their convictions earlier. *Kwan*, 407 F.3d at 1012. Similarly, the petition is subject to the equitable doctrine of laches, which bars a claim if unreasonable delay causes prejudice to the defendant. *Tellink*, 24 F.3d at 45. If a respondent seeks dismissal of a petition for error coram nobis on the ground of laches, the respondent bears the burden of showing he or she was prejudiced by the delay. *Id.* at 47.

      **1.   Reason for Not Attacking Conviction Earlier**

      Petitioner contends that he did not petition for writ of error coram nobis earlier because he did not know that his plea

agreement would result in automatic deportation until he was

actually detained. Petitioner asserts that his attorney did not

advise him that a loss exceeding $10,000 constituted an

aggravated felony requiring mandatory deportation. Roger Nutall,

Petitioner's successor counsel during his plea agreement, states:

> [A]t the time of our negotiations and in sentencing, the
> concept of deportation based upon a loss related aggravated
> felony was not contemplated by either of us. Having said
> that, and having recently done the research, I would
> essentially have to "fall on my sword" and admit that I was
> simply not aware that the law had been changed some time ago
> to reflect that aggravated felony treatment was implicated
> at a $10,000.00 actual loss, as opposed to the previous
> standard of $200,000.00.

Doc. 270, Ex. C, 2.

The United States rejoins that Petitioner has always been

aware of the immigration consequences of his guilty plea. The

United States contends that Petitioner made a calculated gamble

when he entered into the plea agreement, cognizant of the

immigration risks. Defendant received a copy of the original

presentence report dated January 10, 2005, which stated:

"According to Immigration officials, although the defendant is a

Legal Resident Alien in the United States, the nature of the

instant conviction subjects the defendant to deportation." PSR, ¶

62. The revised presentence report dated July 24, 2006 stated:

"According to Immigration officials, although the defendant is a

Legal Resident Alien in the United States, the nature of the

instant conviction may subject the defendant to deportation."

PSR, ¶ 50. Petitioner's sentencing memorandum stated:

> In this latter regard, it remains extremely unfortunate that Akop Krboyan _may_ face the possibility of immigration consequences. When confronting this possibility, Mr. Krboyan says "I can't take my wife and family with me, and I can't leave them either." In this sense, the reason that he might be the subject of immigration proceedings is that the offenses to which he has pled may be considered "aggravated felonies," since the loss __slightly__ exceeds $10,000.00. Counsel, in terms of his research, rather doubts that this alone could cause deportation, but where there is a conviction of a crime, and the sentence is one year, or longer, it may be that such a sentence would somehow suggest that this is a crime of moral turpitude, which might, thereby, implicate deportation.

Doc. 274-1, 4. At the September 7, 2006 sentencing hearing, the United States stated: "He's going to be on their radar anyway because he's pled guilty to a felony involving a false statement where the amount of loss is over $10,000. That automatically puts him on their radar." Doc. 282-5, 31:9-12.

In _United States v. Kwan_, 407 F.3d at 1013-1014, the Ninth Circuit concluded that the petitioner had provided a reasonable explanation for failing to challenge his conviction earlier: reliance on his defense counsel's incorrect advice that there was little chance his conviction would cause deportation. Defense counsel assured Kwan "that although there was technically a possibility of deportation, 'it was not a serious possibility.'" _Id._ at 1008. Only after the INS re-initiated removal proceedings against Kwan did he realize that his attorney had erred. _Id._ at 1014. "Although it may have been more prudent of [petitioner] to collaterally attack his conviction earlier, his course of action

was reasonable. The law does not require [petitioner] to challenge his conviction at the earliest opportunity, it only requires [petitioner] to have sound reasons for not doing so." *Id.*

It is undisputed that the immigration consequences of Petitioner's plea agreement were considered and discussed at length during the plea agreement and sentencing hearing. The presentence report warned Petitioner that the plea agreement "may" subject him to deportation (PSR, ¶ 50), and the sentencing memorandum warned that Petitioner "may" face the possibility of immigration consequences (Doc. 274-1, 4). At sentencing, the United States warned Petitioner that he would be on the Immigration and Naturalization Service's "radar anyways because he's pled guilty to a felony involving a false statement where the amount of loss is over $10,000. That automatically puts him on their radar." Doc. 263, 31.

Although Petitioner was advised of the possibility of deportation, his sentencing memorandum provides in pertinent part:

> In this sense, the reason that he might be the subject of immigration proceedings is that the offenses to which he has pled may be considered "aggravated felonies," since the loss <u>slightly</u> exceeds $10,000.00. Counsel, in terms of his research, rather doubts that this alone could cause deportation, but where there is a conviction of a crime, and the sentence is one year, or longer, it may be that such a sentence would somehow suggest that this is a crime of moral turpitude, which might, thereby, implicate deportation.

12

Doc. 274-1, 4. Petitioner's counsel advised him that pleading to a loss that slightly exceeds $10,000 *might* subject him to immigration proceedings, but he doubted that this alone could cause deportation. Likewise, in *Kwan*, 407 F.3d at 1008, petitioner's counsel advised him that although there was technically a possibility of deportation, it was not a serious possibility. Like the petitioner in *Kwan*, Petitioner alleges that he did not realize that his counsel had misled him until the INS initiated removal proceedings against him. As in *Kwan*, "[a]lthough it may have been more prudent for [Petitioner] to collaterally attack his conviction earlier, his course of action was reasonable." *Id.* at 1014. After Petitioner received the notice of removal from the Department of Homeland Security on February 8, 2010, he has been diligent in attacking his plea agreement by filing a motion to withdraw the guilty plea (Doc. 265); motion to correct judgment and writ of error coram nobis (Doc. 270); motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docs. 282-283); and motion to reconsider the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and motion to reconsider writ of error coram nobis (Doc. 284). Petitioner has provided a reasonable explanation for failing to challenge his conviction earlier. *See Kwan*, 407 F.3d at 1013-1014.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2. Prejudice to Government

The United States contends that the government is prejudiced by the retirement and relocation of the case agent and lapse in memories of the case agent and government witnesses. The United States asserts that this prejudice would jeopardize a retrial of the case now.

Petitioner cites *United States v. Hubening*, 2010 WL 2650625 (E.D. Cal. 2010), a non-precedential case with similar reasons for prejudice, unavailability of witnesses and lapse of memory. *Hubenig* recognized that officers routinely depend on citations and/or other arrest reports to refresh their recollections and relocated Park Rangers are regularly brought back to testify in criminal matters. These circumstances failed to establish significant prejudice as a result of the delay. *Id.* at *3-*4. If the agent is unavailable, his testimony from the first trial can be used. The United States has failed to show significant prejudice as a result of Petitioner's delay.

Petitioner satisfies the second requirement for error coram nobis relief.

## C. Adverse Consequences

Petitioner has been ordered deported based on his conviction, which satisfies the third requirement for error coram nobis relief. "It is undisputed that the possibility of deportation is an 'adverse consequence' of [petitioner's] conviction sufficient to satisfy Article III's case or

14

controversy requirement." *Kwan*, 407 F.3d at 1014.

D.   <u>Fundamental Error</u>

A coram nobis petitioner may show fundamental error by establishing that he received ineffective assistance of counsel. *Id*. To prevail on a claim of ineffective assistance of counsel, a petitioner must show: (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the deficiencies in counsel's performance were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 688 & 692, 104 S.Ct. 2052 (1984).

1.   <u>Retroactivity of Padilla v. Kentucky</u>

The parties contest whether *Padilla v. Kentucky*, ---U.S.---, 130 S.Ct. 1473 (2010), applies retroactively to Petitioner's plea agreement. In *Padilla*, a defendant who pled guilty to drug-related charges filed a motion for post-conviction relief, alleging that his attorney misadvised him about the potential for deportation as a consequence of his guilty plea. *Id.* at 1478. The Supreme Court stated that "[b]efore deciding whether to plead guilty, a defendant is entitled to the 'effective assistance of counsel.'" *Id.* at 1480-1481 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441 (1970)). The Supreme Court held that defense counsel's performance was deficient because he did not advise defendant that his guilty plea would result in automatic deportation. *Id*. at 1483.

The central issue in determining whether *Padilla* applies retroactively is whether it announces a new rule. In *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060 (1989), the Supreme Court held that as a general rule, new constitutional rules of criminal procedure are not applicable to cases which have become final before the new rule is announced. Under *Teague*, "an old rule applies on both direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416, 127 S.Ct. 1173 (2007). "A holding constitutes a 'new rule' within the meaning of *Teague* if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not 'dictated by precedent existing at the time the defendant's conviction became final.'" *Graham v. Collins*, 506 U.S. 461, 467, 113 S.Ct. 892 (1993) (quoting *Teague*, 489 U.S. at 301)).

The United States contends that *Padilla* establishes a new rule requiring counsel to advise defendants of possible immigration consequences and should not be applied retroactively to Petitioner's conviction four years ago.

Petitioner again cites *Hubenig*, 2010 WL 2650625, *5 (E.D. Cal. 2010) for its holding that *Padilla* did not establish new law but instead applied the first prong of the *Strickland* test for what constitutes ineffective assistance of counsel, an old, well-established rule of law. *Id. Hubenig* observed that the Supreme Court issued three relatively recent opinions applying the *Strickland* test in a variety of factual contexts, and none of those cases were deemed new rules. *Id.* at *6. (citing *Rompilla v.*

16

*Beard*, 545 U.S. 374, 125 S.Ct. 2456 (2005); *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527 (2003); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000)). As the Eleventh Circuit noted:

> *Williams*, *Wiggins*, and *Rompilla* are not new law under *Teague*. . . . Strickland set forth the paradigmatic example of a rule of general application; it establishes a broad and flexible standard for the review of an attorney's performance in a variety of factual circumstances. In *Williams*, *Wiggins*, and *Rompilla*, the Court did nothing more than apply Strickland's standard to a specific set of circumstances: in *Williams*, counsel's failure to uncover available state records indicating Williams's "nightmarish childhood,"; in *Wiggins*, counsel's failure to investigate Wiggins's background, despite evidence of his abusive upbringing; and in *Rompilla*, counsel's failure to investigate a file containing evidence that the state intended to use in aggravation.

*Newland v. Hall*, 527 F.3d 1162, 1197 (11th Cir. 2008).

In *United States v. Bonilla*, 637 F.3d 980, 982 (9th Cir. 2011), the district court denied petitioner's motion to withdraw his plea. The district court relied on Ninth Circuit authority in effect at the time, which held that attorneys were not required to advise clients about immigration consequences of a plea because deportation was simply a collateral consequence of the plea; *Padilla* was then pending before the Supreme Court. *Id.* The Ninth Circuit was not faced with the question whether *Padilla* applied retroactively. *Bonilla* analyzed *Padilla*'s holdings regarding the responsibility of criminal defense counsel to advise clients about immigration consequences, and vacated defendant's plea and conviction. *Id.* at 983-984.

Based on the Ninth Circuit's retroactive application of *Padilla* in *Bonilla*, *Padilla* applies retroactively to Petitioner's writ of error coram nobis.

## 2.   Objective Standard of Reasonableness

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-688.

Petitioner was convicted based on a guilty plea in which the loss equaled $12,113, which constitutes an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(M)(i) ("The term 'aggravated felony' means . . . an offense that involves fraud or deceit in which the loss to the victim or victim exceeds $10,000 . . ..").  8 U.S.C. § 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Petitioner's deportation was "presumptively mandatory" under 8 U.S.C. § 1227(a)(2)(A)(iii). *Bonilla*, 637 F.3d at 982. "Under contemporary law, if a noncitizen has committed a removable offense . . . his removal is *practically inevitable* but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Padilla*, 130 S.Ct. at 1480. Subject to limited exceptions, this discretionary relief is not available for aggravated felonies. 8 U.S.C. § 1229b. 8

18

U.S.C. § 1182(h) further provides that no waiver of deportation shall be granted "in the case of an alien lawfully admitted for permanent residence if ... since the date of such admission the alien has been convicted of an aggravated felony."

In *Padilla,* 130 S.Ct. at 1483, the Supreme Court concluded that counsel's performance fell below an objective standard of reasonableness, satisfying the first prong of the *Strickland* test:

> In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. *See* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.
> . . .
> When the law is not succinct and straightforward . . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

In *Kwan*, 407 F.3d at 1015-1017, the Ninth Circuit concluded

that counsel's performance was objectively unreasonable and met

the first prong of the *Strickland* test:

> We agree that where, as here, counsel has not merely failed
> to inform, but has effectively misled, his client about the
> immigration consequences of a conviction, counsel's
> performance is objectively unreasonable under contemporary
> standards for attorney competence. Here, Kwan *asked*
> counsel whether pleading guilty would cause him to be
> deportable, and counsel chose to advise him. Moreover,
> counsel represented himself as having expertise on the
> immigration consequences of criminal convictions.
> Subsequently, counsel either failed to keep abreast of
> relevant and significant changes in the law or failed to
> inform Kwan of those changes' effect on the deportation
> consequences of Kwan's conviction. In either case, counsel
> never advised Kwan of the options that remained open to him
> prior to sentencing, and counsel never informed the
> sentencing judge that a sentence only two days shorter than
> the sentence ultimately imposed would enable Kwan to avoid
> deportation and remain united with his family.
>
> That counsel may have misled Kwan out of ignorance is no
> excuse. It is a basic rule of professional conduct that a
> lawyer must maintain competence by keeping abreast of
> changes in the law and its practice ... Although counsel
> was a criminal defense attorney and not an immigration
> attorney, counsel made an affirmative representation to
> Kwan that he had knowledge and experience regarding the
> immigration consequences of criminal convictions; as a
> result, counsel had a professional responsibility to inform
> himself and his client of significant changes in the law
> that drastically affected the immigration consequences of
> his client's plea ....

Here, Mr. Nuttall's performance was deficient under the

first prong of the *Strickland* test. The pertinent removal

statutes, 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. §

1101(a)(43)(M)(i), are unambiguous and made Petitioner's

deportation presumptively mandatory as a result of his plea.

Petitioner pled guilty under his counsel's mistaken advice that

Petitioner's chances of deportation would be reduced if his

prison sentence was less than one year, without considering the

amount of loss. Because the amount to which Petitioner pled

guilty was in excess of $10,000, however, the crime was an

aggravated felony and Petitioner's deportation is mandatory. *See*

8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(M)(i).

Under *Padilla* and *Kwan*, Mr. Nuttall should have advised

Petitioner of the mandatory immigration consequences of his

guilty plea. Instead, Petitioner's counsel offered the opposite

advice in Petitioner's sentencing memorandum:

> In this latter regard, it remains extremely unfortunate that
> Akop Krboyan may face the possibility of immigration
> consequences. When confronting this possibility, Mr. Krboyan
> says "I can't take my wife and family with me, and I can't
> leave them either." In this sense, the reason that he might
> be the subject of immigration proceedings is that the
> offenses to which he has pled may be considered "aggravated
> felonies," since the loss slightly exceeds $10,000.00.
> Counsel, in terms of his research, rather doubts that this
> alone could cause deportation, but where there is a
> conviction of a crime, and the sentence is one year, or
> longer, it may be that such a sentence would somehow suggest
> that this is a crime of moral turpitude, which might,
> thereby, implicate deportation.

Doc. 274-1, 4.

At Petitioner's sentencing hearing, the United States stated

that Petitioner would be on the INS's "radar anyway because he's

pled guilty to a felony involving a false statement where the

amount of loss is over $10,000. That automatically puts him on

their radar." Doc. 282-5, 31:9-12. Despite this notice that the

amount of loss was material to deportation, counsel did nothing

and permitted the sentencing to proceed, instead of requesting

time to research and inform himself of the law. Ignoring the

prosecutor's statement that Petitioner would be on INS's "radar" when the law clearly mandates his deportation raises a red flag under *Padilla*. *See Padilla,* 130 S.Ct. at 1483 ("When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear."). "A criminal defendant who faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty." *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011).

The first prong of the *Strickland* test is met.

> 3.   <u>Prejudice</u>

The *Strickland* test for prejudice requires a petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

> [A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle

him.

*Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838 (1993).

Petitioner contends that he has been prejudiced because he would not have pleaded guilty if he had known of the actual immigration consequences of his plea. Petitioner points to *Kwan*'s statement on the issue:

> Kwan alleges that, but for counsel's deficient performance, the outcome of his proceedings would have differed in two ways. Specifically, Kwan alleges that "had he known what constituted an 'aggravated felony,' he would have discussed with his lawyer the possibility of amending his plea agreement or asking the [sentencing] court for a downward departure." Although the sentencing judge would not have had the discretion to grant a downward departure solely on the basis of immigration consequences ..., Kwan was potentially eligible for downward departures on other grounds. Had counsel and the court been aware that a nominally shorter sentence would enable Kwan to avoid deportation, there is a reasonable probability that the court would have imposed a sentence of less than one year.

> In addition, Kwan explains that, had he been made aware of the deportation consequences of his conviction, he would have explored the option of renegotiating his plea agreement. That Kwan asked counsel about the immigration consequences of pleading guilty before agreeing to do so demonstrates clearly 'that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty.' ... Kwan has also gone to great lengths to avoid deportation and separation from his wife and children, who are all United States citizens. Taken together, these facts establish that but for counsel's deficient performance, there is a reasonable probability that Kwan would have moved to withdraw his guilty plea.  After withdrawing his plea, Kwan could have gone to trial or renegotiated his plea agreement to avoid deportation; he could have pled guilty to a lesser charge, or the parties could have stipulated that Kwan would be sentenced to less than one year in prison.

> ... [A] sentencing court may exercise its discretion to permit a defendant to withdraw his guilty plea prior to sentencing if the defendant shows a fair and just reason for requesting the withdrawal ... There is a reasonable probability that the sentencing court in this case would have considered the significant change in the immigration consequences of Kwan's plea to be a fair and just reason for

1
2
3
4
5

withdrawing his plea. While the sentencing court's decision to grant or deny a motion to withdraw is discretionary, 'to show prejudice [Kwan] need only show "a probability sufficient to undermine confidence in the outcome"' that he could have withdrawn his plea ... 'A deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can constitute ineffective assistance of counsel.' ....

6
7
8
9

For the foregoing reasons, we conclude that Kwan has established his claim of ineffective assistance of counsel under *Strickland*, which is fundamental error.  Because Kwan satisfied all four requirements for coram nobis relief, we reverse and remand to the district court with instructions to issue the writ, vacate Kwan's sentence, and impose a sentence of one day less than one year.

10

*Kwan*, 407 F.3d at 1017-1018.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In seeking coram nobis relief, Petitioner moves to change the factual basis of his guilty plea to provide that there was no loss to the insurance company because of his scheme to defraud. Petitioner's motion is based on the fact that he did not plead guilty to arson and, therefore, the insurance company merely paid Petitioner the legitimate losses from the fire. Under Petitioner's plea agreement, the stated loss was $12,113 (the amount the insurance company paid to Petitioner), rather than $70,000 (the amount Petitioner requested from the insurance company). Under the Sentencing Guidelines, the amount of loss should have been $70,000, not $12,113. *See United States v. McCormac*, 309 F.3d 623, 627 (9th Cir. 2002) (discussing the "core rule that has framed the calculation of loss in fraud convictions": "Loss is the greater of the actual or intended loss."). The court cannot and should not grant a writ of error coram nobis which changes the true facts to which Petitioner

24

pleaded guilty to show that there was no monetary loss to the insurance company. The insurance company paid Petitioner $12,113 in claims proceeds. A plea based on any amount lower than $12,113-the amount the insurance company paid Petitioner as a result of the fire-would have been dishonest. Petitioner's plea agreement was already generous. The factual basis of Petitioner's plea cannot be amended to change the loss from $12,113 to $0.

Alternatively, Petitioner moves to withdraw his guilty plea. "In the context of a plea, a petitioner satisfies the prejudice prong of the *Strickland* test where 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Smith v. Mahoney*, 611 F.3d 978, 985 (9th Cir. 2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366 (1985)).

Petitioner faced two alternatives: (1) pleading guilty, resulting in mandatory deportation and permanent separation from his family; and (2) proceeding to trial, with the possibility of deportation if found guilty. Petitioner's first trial resulted in Petitioner's conviction on all nineteen counts of the indictment. If Petitioner had not pled guilty and had proceeded with a second trial, it is possible that he would have been convicted and deported. Petitioner, however, asserts that if he had known that pleading guilty would result in mandatory deportation, he would have proceeded with the second trial. The Supreme Court has

characterized deportation as "the equivalent of banishment or exile." *Padilla*, 130 S.Ct. at 1486. Faced with the choice between certain deportation and the possibility of escaping deportation, it is reasonable to accept Petitioner's assertion that he would not have pled guilty and would have insisted on going to trial.

Petitioner's motion to reconsider the denial of his writ of error coram nobis is GRANTED.

### V.   MOTION TO STRIKE

The United States objects to, and moves to strike, Petitioner's supplemental memorandum (Doc. 292), filed without leave after the hearing and after the matter had already been submitted. Petitioner's supplemental memorandum was improper. The United States' opposition to Petitioner's supplemental memorandum, however, is a 12-page brief. Because resolution of Petitioner's motion is not dependent on Petitioner's supplemental brief, it is not necessary to strike either Petitioner's or the United States' supplemental briefs. Counsel are advised to seek leave before filing supplemental memorandum in the future.

The United States' motion to strike is DENIED.

### VI.   CONCLUSION

For the reasons stated:

1. Petitioner's motion to reconsider writ of error coram nobis is GRANTED.

2. The United States' motion to strike is DENIED.

3. The United States shall retry Petitioner within forty five (45) days of electronic service of this decision.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IT IS SO ORDERED.

Dated: May 27, 2011

                                        /s/ Oliver W. Wanger
                              OLIVER W. WANGER
                              UNITED STATES DISTRICT JUDGE